UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA S. CANTU,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:16-cv-741

HONORABLE PAUL L. MALONEY

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-nine years of age on the date of the ALJ's decision. (PageID.43, 72.) She completed high school and has worked in the past as a unit coordinator and phlebotomist. (PageID.94–278.) Plaintiff has previously applied for benefits in 2010. That application resulted in an unfavorable decision by an ALJ on July 13, 2012. It does not appear that Plaintiff further pursued that application. (PageID.102–122.) Instead, Plaintiff filed a new application for DIB and

SSI on September 4, 2013, alleging disability due to a back injury, back surgery with hardware placement, Type I diabetes, depression, anxiety, and chronic back pain. (PageID.123–124, 145–146, 238–250.) These applications were denied on January 15, 2014, after which time Plaintiff requested a hearing before an ALJ. (PageID.173–193.) On April 9, 2015, Plaintiff appeared with her counsel before ALJ Nicholas Ohanesian for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.65–100.) On May 8, 2015, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.43–64.) On April 21, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.31–35.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c) 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.20(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In the decision, the ALJ first discussed Plaintiff's prior application for benefits. Noting that Plaintiff did not request that the prior application be reopened, the ALJ declined to reopen that application and concluded that the June 13, 2012, decision was final and binding. As such, despite Plaintiff's earlier alleged onset date, the ALJ stated that the issue of disability would be considered beginning July 14, 2012, the day after the prior decision. (PageID.46.)

Turning to the sequential analysis, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.49.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) degenerative disc disease of the thoracic spine, status post fusion; (2) diabetes mellitus; (3) carpal tunnel syndrome; and (4) affective disorder (adjustment disorder with mixed anxiety and depression). (PageID.49.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.49–52.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

4

> less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with need to change position every half hour for one to two minutes; is capable of occasionally climbing ramps and stairs and never climbing ladders, ropes, and scaffolds; be able to occasionally stoop, kneel, crouch, crawl; is limited to frequent handling, fingering and feeling bilaterally; limited to concentrated exposure to vibration; limited to simple, routine, repetitive tasks; working in a small familiar group. I am defining a small familiar group as a group of ten employees or less.:

(PageID.52.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.57–58.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: machine tender (7,800 regional positions), line attendant (4,800 regional positions), and packager (6,300 regional positions.) (PageID.95–97.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.59.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from April 28, 2009, through May 8, 2015, the date of decision. (PageID.59.)

## DISCUSSION

Plaintiff's brief provides a lengthy excerpt of a March 13, 2013, opinion from Dr. Gretchen Goltz.[2] (PageID.908–910.) Dr. Goltz's opinion is contained in a lumbar spine medical

---

[2] On August 22, 2016, the Court entered a notice directing the filing of briefs in this matter. Among other things, the notice stated that Plaintiff's initial brief "must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue." (PageID.899.) Plaintiff's initial brief provides only a vague and generic statement of errors. (PageID.907.) The Court therefore has framed the issues for review and has gleaned an argument that the ALJ's discussion of Dr. Gretchen Goltz's opinion violates the treating physician rule from Plaintiff's brief. Plaintiff's counsel is cautioned that future briefs that fail to provide a statement of errors containing *specific* errors may be stricken.

source statement worksheet in which her sole obligation was to fill in a blank, circle an answer, check a box, or provide a short answer. (PageID.368–371.) Dr. Goltz's responses to the worksheet's questions indicate that she had been treating Plaintiff since January 21, 2009. She had diagnosed Plaintiff with post-surgical pain in the thoracic spine and Plaintiff's prognosis was "fair." (PageID.368.) When asked to describe the clinical findings that show the claimant's medical impairments, Dr. Goltz wrote that Plaintiff had muscle spasms in the thoracic spine. There was decreased range of motion, flexion, and extension. Additionally, Dr. Goltz identified a chronic compress deformity at T11, and postoperative changes at T9-L1. (PageID.368.) Plaintiff's symptoms included pain in the mid-thoracic spine that radiated to the shoulder and sides, as well as a depressed mood due to the chronic pain. Plaintiff also had dysfunctional sleep and poor blood sugar control. (PageID.368.) Dr. Goltz believed that Plaintiff could only walk one or two city blocks without rest. She could sit for forty-five minutes at one time before needing to get up, and stand for forty minutes before needing to sit down or walk around. (PageID.369.) In total, Plaintiff could only sit for about two hours and stand or walk for about two hours during the workday. (PageID.369.)

Furthermore, Dr. Goltz wrote that, were she to work, Plaintiff would need to be able to walk for a period of fifteen minutes, every forty-five minutes. (PageID.370.) Plaintiff would need to take unscheduled breaks five to six times a day, each lasting for a period of twenty minutes. (PageiD.370.) Plaintiff would likely be off task for twenty-five percent or more of the workday and was capable of only low stress work. (PageID.371.) She could only occasionally lift and carry less than ten pound weights, rarely lift and carry ten pound weights, and never lift or carry heavier weights. Plaintiff could never stoop, crouch, or climb ladders, and only rarely twist and climb stairs.

6

(PageID.370.) During the workday, Plaintiff could never use her arms for reaching overhead, and only use her hands to grasp, turn, and twist objects for ten to twenty percent of the day. (PageID.370–371.) Finally, were she to work, Dr. Goltz stated that she would expect Plaintiff to be absent more than four days per month. (PageID.371.) On April 1, 2015, Dr. Goltz wrote that she believed these limitations were still valid. (PageID.898.)

> After summarizing Dr. Goltz's opinion, the ALJ gave it only "little weight:"
>
> While Dr. Goltz is the claimant's treating physician and has a longitudinal history of her medical condition, Dr. Goltz's extreme opinion is inconsistent with the record as a whole and more specifically, with her own treatment records. The records indicate that the claimant's conditions are controlled with minimal conservative treatment. For example, she does not receive any treatment for her carpal tunnel syndrome, her diabetes is controlled with insulin, her affective disorder is controlled with psychotropic medication, and her spine condition is controlled with injection therapy. In addition, the claimant has minimal findings on examination. For example, Dr. Goltz' examination in March 2013 that revealed some limited range of motion in the spine, but no sensory loss, intact reflexes, normal gait and normal lower extremity muscle tone (Exhibit B6F/69); and her examination in August 2013 that revealed normal musculoskeletal range of motion, normal muscle strength, intact motor functions, and stability in all extremities with no pain on palpation (Exhibit B6F/111). Additional examples are the examinations in July and December of 2014 that revealed the claimant appeared comfortable and had a steady gait, full strength in the lower extremities, intact cerebellar functions and the ability to flex to the knees (Exhibit B22F/1, 5).

(PageID.54–55.) Plaintiff's argument here is brief, and is readily quoted in its entirety.

> The above-mentioned limitations would preclude all competitive employment. This opinion is supported by Ms. Michelle Ross, an impartial vocational expert who appeared at Claimant's hearing. Ms. Ross testified that the Claimant had past work as a unit coordinator and as a phlebotomist, and she opined that the Claimant was unable to perform her past relevant work.
>
> In concluding that the Claimant has the residual functional capacity

7

> to perform less than a full range of light work, the Commissioner erroneously failed to give sufficient weight to the treating physician Gretchen Goltz, D.O. The Commissioner also improperly afforded great weight to the opinion of the non-examining state agency psychologist, Dr. Bruce Douglass.
>
> The opinions of treating sources are accorded substantially greater deference and weight that a doctor who has seen the Claimant only once. This includes opinions regarding diagnosis and the nature and degree of impairment, *Golden v. Secretary of Health and Human Services*, 740 F. Supp. 955, 961 (W.D.N.Y., 1990); *Stamper v. Harris*, 650 F. Supp. 108 (C.A.6, 1981); *Hefner v. Mathews*, 574 F.2d 359 (C.A.6, 1978); and *Harris v. Heckler*, 756 F.2d 431 (C.A.6, 1985). When the opinion of the treating physician is not directly contradicted, it is to be given complete deference, *Shelman v. Heckler*, 821 F.2d 316 (C.A.6., 1987); *Harris*, *supra*; *King v. Heckler*, 742 F.2d 968 (C.A.6, 1984); *Golden*, *supra*. An opinion of a treating physician should not be rejected in the absence of a proper legal basis for rejecting the opinion, *Shelman*, *supra*. If it is established that the treating physician rule has been applied incorrectly then a " . . . denial of benefits may not be upheld based on the substantial evidence standard." *Golden*, *supra*.
>
> A review of the medical records as whole reflects that the Claimant suffered a slip and fall in 2009 and ultimately ended up having a T9-L1 thoracolumbar fusion. Postoperatively, the claimant reported minimal improvement in her pain overall. She then had another slip and fall injury in January 2013 and has experienced severe low back and right leg pain ever since. The records of Dr. Goltz reflect that the Claimant was trialed on a TENS unit and numerous medications (Flexeril, Motrin, Neurontin, Norco) and Claimant was ultimately referred to a pain management clinic for injection therapy and to a physical medicine and rehabilitation specialist. Despite undergoing extensive conservative measures, Claimant's thoracic and low back pain persist.

(PageID.910–911) (internal administrative record citations omitted).

Plaintiff first claims the ALJ erred in assigning greater weight to the opinion of Dr. Bruce Douglass than to the opinion of Dr. Goltz because Dr. Goltz was a treating physician and Dr. Douglass was a state agency psychologist who did not even examine Plaintiff. It is true that, as a

general matter, the Commissioner will give "more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). But is by no means as rigid a rule as Plaintiff would apparently prefer. To the contrary, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Indeed, "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).

The ALJ is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Where a treating physician's opinion is not supported by objective medical facts, a non-examining physician's opinion may be accepted over it "when the non-examining physician clearly states the reasons for his differing opinion." *Carter v. Comm'r of Soc. Sec.*, 36 F. App'x 190, 191 (6th Cir. 2002). Here, it is patent the ALJ understood

9

the agency consultant had not examined Plaintiff, but nonetheless noted that the opinion was consistent with the record and was based upon the consultant's detailed knowledge of agency regulations. (PageID.56.) Furthermore, the ALJ found that Dr. Goltz's opinion was not well supported and was inconsistent with the record. As laid out below, Plaintiff does not identify a reversible error regarding this opinion. Accordingly, the ALJ properly evaluated Dr. Douglass' opinion under 20 C.F.R. §§ 404.1527(c), 416.927(c) and did not err in assigning it greater weight than to Dr. Goltz's opinion.

The thrust of Plaintiff's claim, however, is that the ALJ should have given complete deference to Dr. Goltz's opinion because it was not directly contradicted. The record does not support Plaintiff's contention.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1

(6th Cir. 1987)).³  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff's specific argument here is difficult to ascertain. To the extent she claims the ALJ did not cite evidence that "directly contradicted" the opinion, she does show how the ALJ's discussion failed to pass muster.  Plaintiff's daily activities and conservative treatment are certainly difficult to square with the extreme limitations provided by Dr. Goltz.  Furthermore, Plaintiff does not even attempt to argue the ALJ failed to provide good reasons for assigning less than controlling weight to Dr. Goltz's opinion. Assuming she had, Plaintiff still could not succeed, as the offered

---

³ This authority is entirely consistent with the authority Plaintiff depends upon.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting that deference should be accorded a treating physician's opinion "only if the treating physician's opinion is based on sufficient medical data").

reasons are supported by overwhelming evidence.

Plaintiff began receiving injection therapy from Dr. Sears on March 25, 2013. Even at that initial visit, Plaintiff had a steady gait, and was able to toe, heel, and tandem walk. She had full lower and upper extremity strength. (PageID.385, 390.) Plaintiff initially reported about 30-40% pain relief with injections. She reported she was able to take less pain medications and was more active. (PageID.381–382.) She was referred to a Dr. Marquart, a neurosurgeon, for her complaints of pain. On July 9, 2013, however, Dr. Marquart indicated he did not recommend surgery and thought that Plaintiff's complaints would clear up. A physical examination found an intact gait and station, and a straight leg raise test was negative. (PageID.394–397.) Plaintiff continued to receive injections, and by December 22, 2014, she reported 80% relief lasting a period of three months. (PageID.893, 897.) These records provide substantial evidence in support of the ALJ's finding that Plaintiff experienced relief through conservative treatment. This was an appropriate consideration for the ALJ to make. *See Matar v. Comm'r of Soc. Sec.*, No. 1:15-CV-291, 2016 WL 1064627, at *10 (S.D. Ohio Mar. 15, 2016) (collecting cases), *report and recommendation adopted*, No. 1:15CV291, 2016 WL 1556147 (S.D. Ohio Apr. 18, 2016).

The record certainly indicates Plaintiff struggled with depression. On December 20, 2013, for example, Plaintiff drank as a way to cope with her depression and ended up being taken to jail for drinking and driving. (PageID.804.) Subsequent counseling records, however, indicate that Plaintiff's main fears and anxieties related to the legal process as a result of her arrest. (PageID.798-801.) Dr. Goltz also treated Plaintiff for her depression. On March 13, 2013, the date Dr. Goltz completed her opinion, Plaintiff had a depressed affect, but was oriented to time, place, person, and situation. Plaintiff was not fearful and did not have flight of ideas. While she had mood

swings, she had normal insight and judgment. (PageiD.482–483.) Dr. Goltz continued Plaintiff's dosage and prescription for Cymbalta.

On June 4, 2013, Plaintiff reported her depression was worsening and it was difficult to function. She reported that Cymbalta was not helping much. (PageID.499.) Again, however, while she had a depressed affect, she was oriented to time, place, person, and situation. She was not anxious, fearful, or in denial. She was not forgetful. (PageID.500.) Plaintiff made similar complaints to Dr. Goltz on December 16, 2013. Continuing the pattern, Plaintiff was oriented to time, place, person, and situation, she was not in denial or forgetful. She had normal insight and judgment, as well as normal attention and concentration. (PageID.625.) Accordingly, the ALJ's determination that Dr. Goltz's opinion was inconsistent with her treatment notes is supported by substantial evidence. The Court does not doubt that Plaintiff suffers from a certain amount of limitation due to her impairments, however Plaintiff has not demonstrated how she is limited to an extent greater than the restrictions accounted for in the RFC.

The last paragraph of Plaintiff's brief does not appear to have any relevance to the ALJ's discussion of Dr. Goltz's opinion. Instead it appears Plaintiff contends that her complaints of pain establishes that she is disabled. As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Here, the ALJ found that Plaintiff's statements of pain were not entirely credible based on the medical evidence of record and Plaintiff's daily activities. (PageID.57.) Plaintiff does not argue the ALJ erred in this finding, and even admits that her treatment has been conservative. The Court finds the ALJ's determination to be supported by substantial evidence.

In sum, the ALJ found that the Dr. Goltz's opinion was not well supported and furthermore was inconsistent with the record evidence. The ALJ has provided good reasons, supported by substantial evidence, in making this finding. The Court finds, therefore, the ALJ did not violate the treating physician rule with respect to Dr. Goltz's opinion. This claim of error is denied.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

A separate judgment shall issue.


Dated: May 23, 2017 	 /s/ Paul L. Maloney
	Paul L. Maloney
	United States District Judge